<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ARTHUR THOMAS,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | Civil Action No. 15-3288 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

  This matter comes before the Court upon the appeal of Arthur Thomas ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Richard West denying Plaintiff's application for disability insurance benefits ("DIBs") and for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). The Court has reviewed the parties' submissions. For the following reasons, the Court remands the matter for further proceedings.

**I.  BACKGROUND[1]**

  The Court writes for the parties who are familiar with the facts and procedural history of the case. The Court therefore specifically addresses in the discussion below only those facts relevant to the issues raised on appeal.

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 7.

## II.   STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Additionally, under the Act, disability must be established by objective medical evidence.  To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section."  42 U.S.C. § 423(d)(5)(A).  Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A).  Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503.  The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 119 (3d Cir. 2000).  But, if the ALJ's decision is adequately explained and supported, the Court is not

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

## III.   THE FIVE STEP PROCESS AND THE ALJ'S DECISION

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

> In <u>step two</u>, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In <u>step three</u>, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> <u>Step four</u> requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the <u>final step</u>. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Jones*, 364 F.3d at 118-19 (formatting and emphasis added). "The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). Neither party bears the burden of proof at step three. *Id.* at 263 n.2.

In this case, Plaintiff applied for disability insurance and SSI benefits alleging that he "became unable to work because of [his] disabling condition on July 31, 2010." (*See* R. at 133; *see id.* at 135.) The ALJ engaged in the above five-step sequential evaluation and found: (Step 1) that Plaintiff "has not engaged in substantial gainful activity since July 31, 2010" (*id.* at 14); (Step 2) that Plaintiff "has the following severe impairments: hypertension, obesity, osteoarthritis of the knees, status post left knee total knee replacement and coronary artery disease" (*id.*); (Step 3) that Plaintiff "does not have an impairment or combination of impairments that meets or

4

medically equals the severity of one of the listed impairments" (*id.* at 15); (RFC) that Plaintiff

has the RFC "to perform sedentary work . . . except he cannot climb ladders, ropes or scaffolds"

and "cannot crouch or crawl," and "can occasionally balance, kneel and stoop" (*id.*); (Step 4) that

Plaintiff "is unable to perform any past relevant work" (*id.* at 18); and (Step 5) that given

Plaintiff's age (44), education (at least a high school education), work experience (not material),

and RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff]

can perform" (*id.* at 18).  At step five, the ALJ did not hear testimony of a vocational expert,

instead relying on the Grids and an SSR.  (*Id.* at 18-19.)  The ALJ found, pursuant to SSR 96-9P,

that "postural limitations or restrictions related to such activities as climbing ladders, ropes, or

scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational

base for a full range of unskilled sedentary work significantly because those activities are not

usually required in sedentary work." (*Id.* at 19 (citing SSR 96-9p).)  For these reasons, the ALJ

found Plaintiff not to be disabled.  (*Id.*)  Plaintiff challenges the ALJ's step three, RFC, and step

five findings.  (*See* Pl.'s Br. at 16.)

## IV.   DISCUSSION

Prior to addressing Plaintiff's specific arguments, the Court notes that Plaintiff's brief

fails to comply with Local Civil Rule 9.1.  It contains no meaningful statement of the issues for

review (*see* L. Civ. R. 9.1(e)(5)(A)), no statement of facts (separate from the procedural history)

(*see id.* 9.1(e)(5)(B),(C)), ***no*** citations to the Record to support ***any*** factual statements (*see id.* at

9.1(e)(5)(C)), and no argument section "separately treating each issue" (*see id.* at 9.1(e)(5)(D)).

In the argument section, there is only ***one*** Record citation, and that is to the ALJ's decision.[2]  It is

_____

[2] As the Court has noted in another recent decision, it will not accept any new briefs in other
cases that fail to comply with the Rules.

Plaintiff's burden to support his arguments, not the Court's responsibility to comb through the Record to see if it can find such support. Although Plaintiff has provided inadequate support for his arguments and factual assertions, to avoid additional delay for re-briefing and to not punish the Plaintiff for the errors of his counsel, the Court has addressed Plaintiff's arguments based on the ALJ's decision, citations provided by the Government, and its own research.[3]

## A.   Step Three

Plaintiff argues that "[a]t the third step, of the sequential evaluation the *Cotter* Doctrine, as explained by *Burnett*, . . . calls for the ALJ to compare the combined effect of all of plaintiff's impairments with one or more of the Commissioner's listings." (Pl.'s Br. at 16 (citing generally *Burnett v. Comm'r of Soc. Sec.*) Plaintiff further argues that "[a]t no point anywhere in the decision can we find any discussion of impairments in combination or even some acknowledgement that obesity was considered in connection with plaintiff's arthritic knees under Paragraph 1.02 or in combination with hypertension and coronary artery disease under Paragraph 1.04." (*Id.* at 19.) Plaintiff's step three argument has two components: a general challenge to the ALJ's findings based on an asserted lack of adequate explanation and a specific challenge that the ALJ did not adequately address Plaintiff's obesity.

The Court finds Plaintiff's general argument to be without merit. In *Jones v. Barnhart*, the Third Circuit made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis," so long as the ALJ provides sufficient analysis "to permit meaningful review." 364 F.3d at 505; *see also Scuderi v. Comm'r of Soc.*

---

[3] Plaintiff's stream-of-consciousness brief lays out critiques without specific citations in support of the arguments and makes no effort to put forth positive arguments for why a different finding is justified. In short, he has provided a mostly unsupported diatribe, inappropriately punting actual analysis to the Court. Because the issue of attorney's fees is not before the Court, it has not analyzed the effect, if any, that counsel's failure to comply with the briefing rules (and the corresponding burden placed on the Court) should have on any award of such fees.

*Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) ("[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements."); *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence.  Under our precedents, this is sufficient.").

Here, although the ALJ did not provide detailed analysis under the specific heading for step three, he identified a listing, 4.04, which he gave "[s]pecial consideration" (R. at 15), and he provided a detailed analysis of Plaintiff's impairments and the medical evidence in discussing Plaintiff's RFC (*see id.* at 15-18).  Although Plaintiff references additional listings which he says the ALJ should have specifically noted or explained at step three, Plaintiff does not argue that Plaintiff's impairments meet those listings, explain why they do, or point the Court to any evidence supporting such a finding.

The Court reaches a different conclusion with respect to Plaintiff's specific argument regarding his obesity.  Although the ALJ found Plaintiff's obesity to be a severe impairment, he did not state that he considered obesity in his step three analysis, referring to Plaintiff's "impairments" only generally in that section.  (*See id.* at 14-15.)  The ALJ did state that "[n]o treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment." (*Id.* at 15.)  In the RFC section, the ALJ noted that Dr. Rahel Eyassu, a consultative examining physician on whose opinion the ALJ placed "significant weight," had acknowledged the claimant's obesity along with his other impairments but found that Plaintiff

7

only suffered from certain limitations. (*Id.* at 17.) In this section, the ALJ separately referenced Plaintiff's obesity and stated that it "ha[d] been considered pursuant to SSR 02-1p in the determination of the claimant's residual functioning capacity." (*Id.*)

"[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In *Diaz*, the Third Circuit found the "ALJ's citation of reports by doctors who were aware of Diaz's obesity" insufficient to meet this requirement. *Id.* The Third Circuit stated: "Were there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." *Id.* & n.3 (emphasis in original) (collecting cases reaching a similar conclusion). This Court agrees with *Mason v. Colvin*, No. 15-1861, 2015 WL 6739108 (D.N.J. Nov. 3, 2015), regarding the acceptable level of explanation where obesity is an impairment to be considered. The Court in *Mason* held:

> [T]he ALJ did consider Plaintiff's obesity in combination with her other impairments. She explicitly said, "I have considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-01p." The ALJ went on to quote the Ruling at length, and then explain how obesity can impact other impairments, such as respiratory ailments. The ALJ concluded her discussion by finding that Plaintiff's obesity in combination with her other impairments would in fact not allow her to perform any level of work besides light work. This amount of discussion satisfies the Third Circuit's mandate for enough discussion "sufficient to enable meaningful judicial review."

*Id.* at *4 (quoting the ALJ opinion and *Diaz*) (internal citations omitted). Because the ALJ only cited to Dr. Eyassu's opinion, which by implication considered the impact of Plaintiff's obesity, and SSR 02-1p, without any explanation for how he considered the ruling, the Court will remand

8

the matter for further consideration and/or explanation of Plaintiff's obesity in combination with his other impairments.

### B. RFC Finding

In determining the RFC, Plaintiff argues that "the ALJ is duty-bound to articulate a defensible, rational, evidentiary case regarding the crucial issue of what the claimant can still do despite his impairments and what he cannot do because of those impairments." (Pl.'s Br. at 21.) Plaintiff further argues that "[t]he ALJ must explain which evidence contradicts his finding and which evidence supports his finding and why one set of medical data is found more persuasive than the other." (*Id.* at 22.). Plaintiff not only argues that here the ALJ failed to adequately explain the RFC finding, but he implies (to be generous) that the ALJ manufactured the RFC limitations for the purpose of fitting the findings to an SSR in order to find disability without calling a vocational expert. (*See id.* at 13 ("Finally we get the appearance of SSR 96-9p, the retroactive application of which inspired the otherwise undefended and unexplained findings required to evidence the RFC assessment.").)[4] Such attacks are not only generally inappropriate, in this case, they are also misplaced.

The ALJ analyzed the medical records, the opinions of the examining physicians as well as the State agency medical consultants, and considered Plaintiff's testimony and self-reported

---

[4] *See also* Pl.'s Br. at 24 ("[W]e are told that plaintiff can't crawl but can kneel. Thus we are told that plaintiff can walk and stand for two hours a day, every day, five days a week. Thus we are told that plaintiff can't crouch but can balance himself. But at no point are we afforded the barest explanation as to how the ALJ arrived at these conclusions or why they are important. Only at the end are we able to decipher the importance of the findings. Plaintiff has to be able to walk and stand two hours a day. Otherwise, he can't perform sedentary work as described in the DOT and a vocational expert is necessary to find sedentary jobs where very little walking and standing are necessary. Plaintiff has to be able to balance himself and to stoop occasionally in order to fit in to the Ruling (96-9p) that will afford the ALJ the opportunity to deny benefits by utilizing the 'framework' of the grid without consulting a vocational expert. Thus, as is so often the case, findings are made to accommodate rulings and regulations.").

complaints. (*See* R. at 15-18.) The ALJ explained the weight that he gave each opinion and why, and explained why he did not find all of Plaintiff's allegations to be supported by the medical evidence. (*Id.*) For example, the ALJ noted that, although Plaintiff had knee surgery in 1999, the records showed "no further evidence of treatment for the claimant's knee pain" since 1999, and Plaintiff testified that he "took only over-the-counter pain medication." (*Id.* at 16, 18.)

Plaintiff not only mischaracterizes the level of the ALJ's analysis but again offers no citation to Record evidence which he claims the ALJ overlooked. In fact, as discussed above, Plaintiff includes no citations to the medical records; to the extent that he references ailments, he cherry-picks items without acknowledging or explaining any conflict with other records, as the ALJ does in his analysis. The Court, therefore, finds Plaintiff's general challenge to the adequacy of the ALJ's RFC analysis to be unsupported and unpersuasive. *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) ("[T]he ALJ [is required to] indicate that s/he has considered all the evidence, both for and against the claim, and provide some explanation of why s/he has rejected probative evidence which would have suggested a contrary disposition. . . . [T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.")

## C. Step Five

Plaintiff takes issue with the ALJ's decision at step five both generally because of the process followed (use of the Grids and an SSR, without vocational expert testimony), as well as specifically with regard to a failure to address the ALJ's RFC balance limitation in conjunction with the SSR relied upon. (*See* Pl.'s Br. at 13, 25-31.) With respect to the process to be followed at step five—in the absence of vocational expert testimony—the Third Circuit has held:

> If an agency will rely on rules as a substitute for individualized determination, and thus relieve the agency from the burden of producing evidence, we think advance

notice should be given.   In the Acquiescence Ruling, however, the Agency excepted out those instances where the reliance would be placed on an SSR that includes a statement explaining how the limitation did affect the occupational job base.  We question whether this exception is called for and urge that, as a matter of fairness, alerting a claimant to the relevant rule in advance will always be appropriate. While the Agency can meet its burden by reference to a Ruling, as the Supreme Court has held, nonetheless, the claimant should have the opportunity to consider whether it wishes to attempt to undercut the Commissioner's proffer by calling claimant's own expert.   Obviously, this requires notice in advance of the hearing.

We think it only appropriate to give close scrutiny to the ALJ's reliance on a Ruling as satisfying the Commissioner's burden at Step 5 where the Commissioner has not previously advised or argued the clear applicability of the Ruling in advance of the hearing.  In this way, while the Commissioner has the ability to satisfy its burden in this way, its doing so does not constitute an ambush whereby the claimant, who assumed he would have the opportunity to cross-examine a vocational expert, is left as a practical matter to merely argue against a Ruling in response to the Commissioner's proof.

*Allen v. Barnhart*, 417 F.3d 396, 407-08 (3d Cir. 2005).  The *Allen* Court made clear that "if the Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Id.* at 407.

In this case, the ALJ relied on the grids in conjunction with SSR 96-9P.  The ALJ found that "the additional limitations [of the RFC] have little or no effect on the occupational base of unskilled sedentary work."   (R. at 19 (citing SSR 96-9P).)   The ALJ further stated that "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." (*Id.*)  SSR 96-9P provides:[5]

---

[5] Plaintiff's brief does not contain a separate argument section related to his step five arguments. *See* L. Civ. R. 9.1(e)(5)(D) ("The argument shall be divided into sections separately treating each issue and must set forth Plaintiff's arguments with respect to the issues presented and reasons therefor.").  And, the specific argument regarding the balance limitations appears in the argument

Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. In the SCO, "balancing" means maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces. *If an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base. However, if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base.* Consultation with a vocational resource may be appropriate in some cases.

1996 WL 374185, at *7 (July 2, 1996) (emphasis added). Although the ALJ accurately quotes the first portion of this section, he does not address the requirement to explain the balance limitations. On remand, the ALJ should address Plaintiff's balance limitations consistent with the SSR and/or obtain vocational expert testimony.[6]

---

introduction, not analyzed with the step five discussion later in the brief. Additionally, while Plaintiff argues that the ALJ decision "misquotes" SSR 96-9P and states that "the ruling clearly states that limited balancing **would** significantly erode that base" (*see* Pl.'s Br. at 13 (emphasis added)), he does not quote the rule or cite to any specific portion of the Rule. In fact, although the Court agrees there was error, Plaintiff is the one who misquotes the Rule.

[6] The Court is also unclear on the basis for the limitation for "occasional" balancing. The opinion on which the ALJ placed the most weight does not address balancing, and the two State agency opinions found that Plaintiff could "frequently balance." (R. at 17.) The ALJ appeared to discount the State agency opinions (as not sufficiently limited) with respect to "capacity for standing, walking and lifting" but does not identify an adjustment or explanation for a different conclusion with respect to balancing. (*Id.*)

## V.    CONCLUSION

For the foregoing reasons, the Court remands the matter for further proceedings consistent with this Opinion.  An appropriate Order follows this Opinion.

DATED: February 16, 2016

JOSE L. LINARES
U.S. DISTRICT JUDGE